COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Senior Judge Annunziata


MELANIE CHAMPAGNE

                                                    MEMORANDUM OPINION[*]
v.      Record No. 0339-10-3                              PER CURIAM
                                                       AUGUST 24, 2010
HARRISONBURG ROCKINGHAM
  SOCIAL SERVICES DISTRICT


                FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                              James V. Lane, Judge

               (David R. Martin; Miner, Martin & Hahn, PLC, on brief), for
               appellant.  Appellant submitting on brief.

               (Kim Van Horn Gutterman, Assistant County Attorney; Sherwin J.
               Jacobs, Guardian *ad litem* for the minor children, on brief), for
               appellee.  Appellee and Guardian *ad litem* submitting on brief.


        Melanie Champagne appeals the trial court's order terminating her parental rights to her two

children pursuant to Code § 16.1-283(C)(2) and Code § 16.1-283(E)(i).  She argues the evidence

was insufficient to prove that it was in the best interests of her children to terminate her parental

rights and that she had been unwilling or unable within a reasonable period of time to remedy

substantially the conditions which led to the placement of her children in foster care.  We disagree

and affirm.

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).  So viewed, the evidence

proved that Harrisonburg Rockingham Social Services District (HRSSD) took custody of

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Champagne's two children on July 6, 2008 after Champagne was arrested and incarcerated for driving under the influence while the children were in the car. One child was four years old and the second child was two years old. Champagne's boyfriend had custody of the children for one day, but he was unable to care for them. Champagne's relative cared for the children for approximately one week until the relative was unable to care for them. HRSSD then placed the children in a therapeutic foster care home.

A foster care service plan required Champagne to undergo substance abuse treatment, mental health counseling, obtain stable housing, obtain stable employment, and improve her parenting skills.

HRSSD referred Champagne to the RMH Life Recovery Program (RMH) and to Tara Langston, a certified substance abuse counselor. Langston also provided counseling for Champagne's mental health issues.[1] Champagne completed the program at RMH and attended sessions with Langston from July 28, 2008 through March 5, 2009, when Champagne discontinued treatment against Langston's advice. Langston provisionally diagnosed Champagne with borderline personality disorder and narcissistic personality disorder. Langston testified Champagne only believed she needed mental health treatment due to her anxiety related to the removal of her children. Langston testified that, during the time she counseled Champagne, Champagne made no progress in arresting the chaos in her life. During counseling sessions, Langston was concerned that Champagne was replacing alcohol with prescription drugs and that Champagne was "med seeking" because she obtained prescriptions for pain medications from various doctors and clinics. While the children were in foster care, Champagne tested positive for opiates and she could not provide a valid prescription for the medications. On the

---

[1] At the preliminary removal hearing, Champagne stated she had been on medication for a compulsive disorder.

initial day scheduled for the termination hearing, Champagne testified she was unable to assist in her defense because she received a dose of Dilaudid earlier that day. At the time of the termination hearing, Champagne had completed the paperwork to receive services at the Community Services Board, but counseling had not started and she had not received any mental health treatment in nine months.

Champagne was living in a motel when HRSSD took custody of the children. HRSSD helped Champagne locate and apply for housing, but she was unable to obtain stable housing. Between the time of the removal of the children and the date of the termination hearing, Champagne moved eighteen times.

When HRSSD took custody of the two children, they hoarded food, they had speech difficulties, and they had "their own kind of language between them that no one else could understand." In July 2009, Champagne gave birth to a child, which HRSSD removed from Champagne's custody and placed with paternal relatives after Champagne took the infant to a house where drugs were sold. While Champagne was pregnant, she requested shorter visits with the two children and she cancelled visits. Champagne also had two additional older children. One child lives with paternal relatives and Champagne's paternal rights to the other child were involuntarily terminated in 2005.

When HRSSD took custody of the children, Champagne was working at Jess' Quick Lunch, but she quit because the pay was too low. Champagne next worked at three different restaurants for a short period of time. Champagne was unemployed for six months until after she gave birth. She obtained a job with a telemarketer, but lost the job because she missed work. At the time of the termination hearing, Champagne was babysitting for a friend and she had applied for employment at nine different restaurants.

While in HRSSD custody, the two children lived in the same therapeutic foster home. The children were well-adjusted and both received speech therapy. At the time of the termination hearing, one child's speech had improved and she no longer needed therapy. The second child continued in therapy, but his speech had improved.

Code § 16.1-283(E) provides in part:

> The residual parental rights of a parent or parents of a child who is in the custody of a local board or licensed child-placing agency may be terminated by the court if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . .

> Like a termination under Code § 16.1-283(C)(2), a termination pursuant to Code § 16.1-283(E)(i) must be based upon clear and convincing evidence that the action is in the best interests of the child. In addition, the trial court must find the parent's rights to a sibling of the child previously had been terminated. Thus, under Code § 16.1-283(E)(i), the finding of the prior termination substitutes for a finding that the parent had failed to remedy the conditions leading to the child's foster care placement.

Fields v. Dinwiddie County Dept. of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005) (citations omitted).

> In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, Alexandria Dep't of Human Servs., 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

"'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at

- 4 -

128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2 794, 795 (1990)). The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

HRSSD took custody of Champagne's two young children in July 2008, which was after Champagne's parental rights to another child were terminated in 2005. Despite services from HRSSD, Champagne was unable to obtain stable housing and she was unable to obtain stable employment. Champagne was non-compliant with substance abuse treatment, obtained prescriptions for pain medications from various doctors and clinics, and tested positive for opiates when she did not have a valid prescription. Champagne failed to address mental health issues and she discontinued counseling against the counselor's advice. While pregnant with her fifth child, Champagne requested shorter visits or cancelled visits with her children. When HRSSD took custody of the children, they hoarded food and they spoke a language only they understood, but while in foster care, the children received speech therapy and their communication skills had improved. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). HRSSD presented clear and convincing evidence that it was in the children's best interests to terminate Champagne's parental rights pursuant to Code § 16.1-283(E)(i). Since the trial court did not err in terminating Champagne's parental rights pursuant to Code § 16.1-283(E)(i), we need not consider whether the evidence sufficiently supported a termination pursuant to Code § 16.1-283(C)(2). Fields, 46 Va. App. at 8, 614 S.E.2d at 659. Accordingly, we affirm the decision of the trial court.

Affirmed.